**UNITED STATES DISTRICT COURT**

**DISTRICT OF CONNECTICUT**

**MELISSA BUCCHERI,**
    **- Plaintiff**

    **v.**                              **CIVIL NO. 3:07CV01867 (VLB)(TPS)**

**MICHAEL J. ASTRUE,**
**COMMISSIONER, SOCIAL**
**SECURITY ADMINISTRATION,**
    **- Defendant**

**RECOMMENDED RULING**

The plaintiff, Melissa Buccheri, brings this appeal under 42 U.S.C. § 405(g) of the Social Security Act seeking review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claims for disability and disability insurance benefits ("DIB"). The plaintiff moves for judgment on the pleadings pursuant to Federal Rules of Civil Procedure 12(c) and 56 or, in the alternative, for an order remanding the case for a rehearing. [Dkt. # 7]. The defendant moves for an order affirming the decision of the Commissioner. [Dkt. # 9]. For the reasons set forth below, the plaintiff's motion for remand should be **GRANTED**. [Dkt. # 7]. The parties' competing motions for judgment should be **DENIED**. [Dkt. ## 7, 9]. 28 U.S.C. § 636(b)(1)(A).

**I. Background**

The plaintiff is thirty-three years old and has a high school education. (Tr. 429). She is married with three young children. (Tr. 431, 446). In the past, she has worked as an assistant director and teacher at a day care center, a cashier and a manager and shirt presser at a dry cleaning store. (Tr. 66). She has a medical history of hypertension, asthma and obesity.

On April 23, 2004, the plaintiff underwent a laparoscopic cholecystectomy, or gallbladder removal, at New Britain General Hospital. Stedman's Medical Dictionary 365 (28th Ed. 2006) (hereinafter Stedman's). During the surgery, she became hypoxic and required intubation and resuscitation. Subsequently, the plaintiff was examined by Dr. Barry Spass, a neurologist, who concluded that she likely suffered a right hemispheric stroke. As a result of the stroke, the plaintiff experienced a left-sided hemiparesis, or weakness. (Tr. 65-66, 159-77); Stedman's at 866.

The plaintiff applied for a period of disability and DIB on May 25, 2004, with an alleged onset date of April 23, 2004. Her date last insured was December 31, 2005. (Tr. 421). The plaintiff's application was denied initially on September 29, 2004 and again on reconsideration. (Tr. 26-33). The plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ") and, on June 12, 2006, a hearing was held before ALJ Leonard Cooperman, at which the plaintiff, represented by counsel,

2

testified as well as Jeff Blank, Ph.D., a vocational expert for the Social Security Administration. (Tr. 419-88). At the hearing, the plaintiff alleged additional impairments of blurred vision, fatigue, depression and anxiety. (Tr. 438-39). On June 21, 2006, ALJ Cooperman issued a decision denying the plaintiff's claims. (Tr. 13-23). Thereafter, the Appeals Council denied the plaintiff's request for review, (Tr. 5-8), making the ALJ's decision the final decision of the Commissioner subject to review. The plaintiff timely filed this appeal.

### A. Medical Evidence

A chronology of the relevant medical evidence is as follows. After her stroke, the plaintiff received in-patient rehabilitation for two weeks at the Hospital for Special Care. (Tr. 174-77). There, she was evaluated by Dr. William Pesce, an osteopath, who noted minimal movement in her left upper and lower extremities, mildly decreased sensation on her left side and a functional range of motion with some stiffness in her left shoulder. (Tr. 180-81). Additionally, the plaintiff was seen by Dr. J. Dennis Johnston, a psychologist, who concluded that she was experiencing a normal adjustment reaction to her situation and did not appear to be depressed. (Tr. 178-79). Upon her discharge on May 12, 2004, the plaintiff was given a strength rating of 3/5 in her upper and lower extremities. Initially, she used a wheelchair and relied on a brace or cane to walk. (Tr. 65-66, 145, 437, 440).

Beginning in June, 2004, the plaintiff began to see Drs. Pesce and Spass regularly for follow-up evaluations. At that time, Dr. Spass performed a neurological examination, which revealed weakness in her left upper and lower extremities in the range of 4-/5, decreased fine motor movements in her left hand and slight spasticity in her left leg. He noted that overall the plaintiff's strength was "very good" and could be expected to improve for up to one year. He recommended continued physical and occupational therapy as well as an ophthalmology evaluation. (Tr. 188-90). Dr. Pesce also found that the plaintiff's strength had improved considerably, stating that she had made "a significant neurologic recovery." He observed a mildly antalgic gait with hypertonicity in her left lower extremity.[1] He rated her strength as 5-/5 in the left upper extremity and 4+/5- in the left lower extremity, noting additional weakness in her left ankle. At that time, Dr. Pesce reported that the plaintiff was not walking with a brace. (Tr. 235).

On July 10, 2004, Dr. Eugene Pak performed a consultative examination of the plaintiff for Disability Determination Services (DDS). On examination, Dr. Pak rated the plaintiff's strength as 4+/5 in her left arm, 4/5 in her left leg and 0/5 in her left foot and found her sensory responses to be normal. He observed a

---

[1] An antalgic gait is assumed in order to lessen pain. Hypertonicity is extreme tension of the muscles. Stedman's at 781, 928.

4

stilted gait with the use of a brace. Dr. Pak concluded that the plaintiff would be unable to work in positions requiring sitting, standing, walking, lifting, carrying, handling objects, and traveling due to her left-sided weakness and blurred vision. (Tr. 194-96). Following Dr. Pak's report, DDS determined that the plaintiff's impairments met the severity requirements of Listing 11.04B, which deals with Central Nervous System Vascular Accidents. (Tr. 197). However, approximately one week later, Dr. Stephanie K. Stevens determined based on a review of the medical evidence that the plaintiff's condition had improved in the months following her stroke to the degree of a moderately severe impairment that did not meet the severity and duration requirements of Listing 11.04B. (Tr. 199-207). Dr. Stevens prepared a Residual Functional Capacity ("RFC") assessment, finding that the plaintiff had the ability to lift and/or carry 10 pounds, stand and walk at least 2 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday and limited ability to perform push and pull movements with her lower extremities and fine manipulation movements with her left hand. (Tr. 199-206). Based on this assessment, it was determined that the plaintiff would be unable to perform her past work, but that she could make an adjustment to unskilled sedentary work. (Tr. 99).

In August, 2004, the plaintiff again saw Drs. Pesce and Spass. At that time, Dr. Spass noted that the plaintiff was slowly

5

improving and functioning well. With respect to her blurred vision, he documented that a consulting ophthalmologist noted a visual field cut but otherwise found her vision to be intact. (Tr. 184). Dr. Pesce also reported that the plaintiff was "doing very well." On examination, he determined her strength to be 4+/5 overall and 5-/5 in her left upper extremity with decreased coordination. Dr. Pesce further observed that the plaintiff was able to sit and stand independently and that she walked with good balance, although with a stiff-legged gait, and without the use of an assistive device or brace. (Tr. 214).

Several months later, in November, 2004, Dr. Pesce again evaluated the plaintiff, rating her strength as 5-/5 in her upper and lower extremities. He noted some compensatory rotation in her left foot and ankle and recommended the use of an orthotic. (Tr. 211). Also in November, 2004, Dr. Spass concluded that the plaintiff was recovering well and could be expected to recover for another six months, possibly longer. He found that the plaintiff had a left anterior tibial weakness of 4-/5 and slight spasticity in her left leg. (Tr. 182-83).

The plaintiff next visited Dr. Spass for follow-up consultations in May and September, 2005. In May, 2005, Dr. Spass noted that the plaintiff complained of pain in the left side of her neck and left shoulder and had mild weakness in her left foot. He concluded that the plaintiff had "recovered well from the stroke,"

6

but ordered an MRI to evaluate her complaints of pain. (Tr. 335-36). In September, 2005, Dr. Spass determined that the plaintiff's strength was normal except for mild residual spasticity in her left leg and left anterior tibial weakness. In addition, he reported that the plaintiff continued to complain of poor peripheral vision on the left, but indicated that an examination did not reveal any abnormalities. He concluded that the plaintiff had made a good recovery and no longer required routine follow-up consultations. (Tr. 333-34).

In December, 2005, the plaintiff saw Dr. Pesce and complained of worsened tightness in her left ankle. She stated that she had had a number of falls due to tripping over her left foot. Dr. Pesce noted that she had not been wearing an orthotic. He referred the plaintiff to an orthopedic surgeon for a consultation, who informed her of an Achilles lengthening procedure that she took under consideration. (Tr. 233, 401).

In February, 2005, Dr. Carol R. Honeychurch, a non-examining consulting physician for DDS, prepared an RFC assessment and concluded that the plaintiff's complaints of limited capacity were partially credible, finding that she retained the ability to lift 20 pounds occasionally and to stand and walk 3 hours in a workday. (Tr. 221-26).

In March, 2006, the plaintiff returned to Dr. Pesce for an evaluation and disability rating. Dr. Pesce noted that she

7

complained of pain in her left shoulder. On examination, he found that she had good peripheral vision, near full range of motion in her left upper extremity with some shoulder stiffness and hypertonicity in her left ankle resulting in a limited range of motion. He concluded that, although the plaintiff had made significant gains neurologically and functionally, she had "plateaued" with respect to her recovery. As to her level of functioning, he stated that she "is independent with sit to stand. . . . Her balance is good when walking very slowly on level surfaces but more limited when walking quicker or on uneven surfaces. She ambulates without an assistive device. She has difficulty buttoning buttons and picking up objects with the left hand because of her decreased dexterity." (Tr. 229-231).

The plaintiff has also been treated by Dr. Michael S. Radin for fatigue, flushing, swelling and lightheadedness. In March, 2006, Dr. Radin diagnosed hyperandrogenism with increased DHEAS levels and possible polycystic ovarian syndrome. He prescribed Spironolactone and recommended weight loss with diet and exercise. (Tr. 349-52).

Finally, in May, 2006, Dr. Edgardo Lorenzo, a psychiatrist, diagnosed the plaintiff with recurrent depression and prescribed Cymbalta. He observed that she had a sad mood and worried affect, but that her thought processes were normal without delusions or hallucinations. He further noted that she appeared to be alert and

8

oriented and to have an average intelligence, adequate attention span and unimpaired judgment and insight. Dr. Lorenzo's treatment notes indicate that the plaintiff did not attend a second follow-up appointment. (Tr. 405-406).

**B. The ALJ's Decision**

At the hearing, the plaintiff testified as to the effects of her impairments and her limitations. She stated that she has pain and tightness in her left hand. Although she is right-handed, she has difficulty performing tasks requiring fine motor manipulation with her left hand, such as tying shoes, buttoning and holding objects. She needs help getting dressed. (Tr. 441-42). She testified that she has pain and numbness in her left leg and foot and rigidity in her left ankle. As a result, she stated that she cannot walk long distances without support, has trouble climbing stairs without a railing and is limited to sitting or standing for a maximum of twenty minutes at a time. (Tr. 439-40, 450). Because of her blurred vision, she testified that she suffers headaches, can read for only ten minutes and does not drive at night. (Tr. 443, 453). She further testified that she has limited energy and can no longer perform household chores. She cares for her three children at home, but explained that she can call her husband and mother at work if she needs help. (Tr. 445-47). In addition, she indicated that she has become fearful and prone to panic since her stroke and has been unable to focus or concentrate. To treat these

9

symptoms, she has been prescribed Effexor by her current physician; however, she has not sought psychiatric treatment other than her one visit with Dr. Lorenzo. (Tr. 443-44, 449, 455-56, 476, 480-81). With respect to the limitations she faces as a result of her fatigue and mental health, the plaintiff stated that she did not have "the energy, the drive, the enthusiasm, the will . . . to get up in the morning, get dressed, be at a place at a certain time. . . ." (Tr. 476).

After reviewing the medical evidence and the hearing testimony, the ALJ determined that the plaintiff has the capacity to perform a significant range of sedentary work existing in the national economy and, therefore, is not disabled. Applying the five-step analysis set forth in 20 C.F.R. § 404.1520, the ALJ found that the plaintiff had not engaged in substantial gainful activity since the alleged onset of her disability. Next, he found that the plaintiff suffered from four severe impairments: 1) the effects of her stroke, 2) fatigue, 3) blurred vision and 4) depression. Third, he found that the plaintiff's severe impairments did not meet or medically equal a listed impairment. The ALJ determined that the plaintiff retained the RFC to perform sedentary work with "[a] sit/stand option, a maximum of 1 hour of reading per day, no climbing or balancing, occasional stooping, kneeling, crawling, and crouching, and limited to gross motor skills only." After finding that the plaintiff was unable to return to her past work, the ALJ

10

relied on the testimony of the vocational expert in concluding that there are a significant number of jobs in the national economy that she could perform, including surveillance monitor, telephone marketer and telephone order taker. (Tr. 13-23).

## II. Standard of Review

A claimant is entitled to disability benefits under the Act if the claimant can demonstrate that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The disability must be of "such severity that [the claimant] is not only unable to do his previous work but cannot, considering [his] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social Security appeals are typically brought by plaintiffs as motions to reverse or remand under 42 U.S.C. § 405(g), which gives the district court appellate jurisdiction over the final administrative decision rendered by the Commissioner. The fact that the plaintiff has brought this appeal as a motion for judgment does not effect either the outcome or the analysis. Under § 405(g), the district court may "enter, upon the pleadings and

transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the cause for a rehearing." The reviewing court will "set aside the ALJ's decision only where it is based upon legal error or is not supported by substantial evidence." Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998). "Substantial evidence" is less than a preponderance, but "more than a scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); see also Yancey v. Apfel, 145 F.3d 106, 110 (2d Cir. 1998). Before deciding whether a benefits determination is supported by substantial evidence, however, a court must "be satisfied that the claimant has had a full hearing under the Secretary's regulations and in accordance with the beneficent purposes of the Act." Cruz v. Sullivan, 912 F.2d 8, 11 (2d Cir. 1990). Because a hearing on disability benefits is a non-adversarial proceeding, it is well-settled that the ALJ has an affirmative obligation to develop the administrative record, even in cases in which the claimant is represented by counsel. See Pratts v. Chater, 94 F.3d. 34, 37 (2d Cir. 1996).

**III. Discussion**

In her motion for judgment on the pleadings, the plaintiff argues that the ALJ's decision is not supported by substantial

12

evidence because 1) her impairments met those set forth in Listing 11.04B and 2) the ALJ did not account for her all of her severe impairments in determining her RFC and in the hypothetical posed to the vocational expert. The plaintiff's arguments are addressed in turn below.

**A.**

The plaintiff first argues that the ALJ erred in failing to find that her impairments met or equaled those set forth in Listing 11.04B. Specifically, Listing 11.04B applies, in relevant part, to those individuals "[w]ith one of the following more than 3 months post-vascular accident: B. Significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station."[2] 20 C.F.R., Pt. 404, Subpt. P, App. 1. The plaintiff contends that Listing 11.04B specifically states a duration requirement of "more than three months post-vascular accident" and asserts that, more than three months following her stroke, she suffered from impairments meeting the severity of the Listing and is therefore at least entitled to a closed period of benefits. The

---

[2]The Regulations define "persistent disorganization of motor function" as "paresis or paralysis, tremor or other involuntary movements, ataxia or sensory disturbances . . . which occur singly or in various combinations . . . . The assessment of the impairment depends on the degree of interference with locomotion and/or interference with the use of fingers, hands, and arms." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 11.00C.

Commissioner responds that the Listing's incorporation of a three-month period does not negate the duration requirement of the Regulations, which requires that an impairment last for at least a twelve-month period. See 20 C.F.R. § 404.1509. The court need not reconcile these competing arguments as it finds ample evidence to support the conclusion that, more than three months following her stroke, the plaintiff did not experience significant and persistent disorganization of motor function in two extremities as required by the Listing.

Among this evidence are the notes of the plaintiff's treating physicians, Drs. Pesce and Spass, from June, 2004, approximately two months after her stroke. Specifically, Dr. Spass reported that the plaintiff's strength overall was "very good," rating it as 4-/5 in her left upper and lower extremities with decreased fine motor movement in her left hand and slight spasticity in her left leg. Dr. Pesce also found considerable improvement in the plaintiff's strength in June, 2004, rating it as 5-/5 and 4+/5 in the left upper and lower extremities, respectively, and stating that she had made a "significant neurologic recovery." In addition, in July, 2004, consulting physician Dr. Stevens, reviewed the medical evidence and determined, contrary to the initial DDS assessment, that the plaintiff suffered from a moderately severe impairment that did not meet the severity of Listing 11.04B. Dr. Stevens concluded that the medical evidence demonstrated that her

14

neurologic function had improved three months after her stroke with expected continued improvement. (Tr. 200, 207). A review of the treating physicians' notes from August, 2004 through March, 2006 reveals further improvement in the plaintiff's strength with residual mild weakness, spasticity and hypertonicity in her left lower extremity and limited fine motor coordination with her left hand.

In support of her argument, the plaintiff relies on the assessment of consulting physician, Dr. Pak, and the initial determination by DDS that she met Listing 11.04B as well as a report by Dr. Pesce in August, 2004. This evidence, however, does not establish that the plaintiff's impairments met or equaled those described in the Listing. Although Dr. Pak assessed the plaintiff as being unable to work in positions requiring sitting, standing, walking, lifting, carrying, handling objects and traveling due to her left-sided weakness, he found on examination that she had 4+/5 strength in her left arm, 4/5 strength in her left leg with decreased muscle tone and 0/5 flexion in her left foot that resulted in a foot-slapping gait on her left side and necessitated the use of a brace. On the basis of Dr. Pak's assessment, DDS determined that the plaintiff's impairments met Listing 11.04B. This determination, however, was reversed following Dr. Stevens' review. Moreover, in support of her conclusion that the plaintiff suffered only a moderately severe impairment, Dr. Stevens relied in

15

part on the medical findings of Dr. Pak with respect to the plaintiff's strength and the impact of the condition of her left foot. (Tr. 207). Finally, with respect to Dr. Pesce's report in August, 2004, he stated that she was "doing very well." He observed: "[the plaintiff] has minimal weakness in her left arm but some decreased coordination. She still has some tightness in her left foot and weakness but is ambulating without an assistive device and without [a] brace." On examination, he rated her strength 4+/5 overall and 5-/5 in her left upper extremity with decreased fine motor coordination. He further noted that the plaintiff was independent with sit to stand and that she walked with a stiff-legged gait but with good balance. (Tr. 214). As the foregoing indicates, substantial evidence supports the ALJ's decision insofar as he did not find that the plaintiff's impairments met or equaled those of Listing 11.04B. Accordingly, it is recommended that the Commissioner's finding in this regard be affirmed.

**B.**

The plaintiff next argues that the RFC is not supported by substantial evidence because it does not include the plaintiff's non-exertional impairments of blurred vision, fatigue, depression and anxiety. The plaintiff further contends that the vocational expert's opinion, based upon this RFC, does not constitute substantial evidence to support the ALJ's determination that the

16

plaintiff was not disabled.

At the outset, it is noted that the ALJ did not find that the plaintiff suffered from the impairment of anxiety. This determination is supported by substantial evidence as the plaintiff did not present medical evidence of a diagnosis and treatment for anxiety to support her claim. See 20 C.F.R. § 1512(c). It is further noted that, in assessing the RFC, the ALJ did account for the plaintiff's vision impairment by including the accommodation of a maximum of one hour of reading per day.

With respect to the plaintiff's impairments of fatigue and depression, it is recommended that the case be remanded for further development of the record as to the plaintiff's functional limitations, if any, resulting from these impairments. The RFC is an "assessment of the extent to which an individual's medically determinable impairment(s) . . . may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." SSR 96-8p. In this case, the ALJ found that the plaintiff had established severe medically determinable impairments of fatigue and depression. In finding her depression to be a severe impairment, he noted that its effect "on her functionality has never been extensively evaluated by medical personnel." (Tr. 19). Thereafter, in discussing his RFC assessment, the ALJ further stated that he did not find the plaintiff's testimony as to the extent of her limitations caused by

17

fatigue and depression to be credible, reasoning that it was inconsistent with medical evidence that "offer[ed] no indication of how she [was] functionally limited either by her fatigue or depression" and noting that the plaintiff had the burden of producing such evidence. (Tr. 20). The ALJ, therefore, did not account for any limitations resulting from the plaintiff's impairments of fatigue and depression in his RFC assessment.

The medical evidence as to the plaintiff's fatigue and depression consisted of reports by Drs. Radin and Lorenzo. It is true that their reports do not provide an assessment of the plaintiff's functional limitations; however, it cannot be inferred from the absence of the physicians' assessments that she does not experience functional limitations. In view of the non-adversarial nature of benefits proceedings and the ALJ's affirmative duty to develop the record, the ALJ had a responsibility to develop the record further and to attempt to obtain assessments from Drs. Radin and Lorenzo as to the plaintiff's level of functioning if the record evidence was insufficient. See also 20 C.F.R. § 404.1512(e). In addition, the ALJ could have sought an assessment from a state agency medical consultant. See 20 C.F.R. § 404.1512(f). There is no indication in the record that the ALJ sought additional evidence from Drs. Radin and Lorenzo or other medical sources. Had the ALJ obtained such evidence, he might have reached a different conclusion as to the credibility of her

18

testimony. It is therefore recommended that the case be remanded to allow for further development of the record with respect to the functional effects of the plaintiff's fatigue and depression and a proper determination of her RFC.

**IV. Conclusion**

Remand is the appropriate remedy where further development of the record is necessary. See e.g., Rosa v. Callahan, 168 F.3d 79, 82-83 (2d Cir. 1999). It is recommended that this case be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion and, specifically, as indicated below. The decision of the Commissioner should be affirmed in all other respects.

On remand, the ALJ must attempt to obtain medical assessments, supported by clinical findings, of the plaintiff's functional limitations, if any, resulting from fatigue and depression, which have been found to constitute severe medically determinable impairments. The ALJ must further document any attempts made to develop the record. If necessary, the ALJ must re-evaluate the plaintiff's RFC in light of any functional limitations that are supported by further assessments.

In addition, the court notes that, in determining the severity of the plaintiff's depression, the ALJ did not follow the "special technique" as set forth in 20 C.F.R. § 404.1520a and as recently

addressed by the Second Circuit in Kohler v. Astrue, -- F.3d --, 2008 WL 4589156 (2d Cir. 2008). These Regulations require that the ALJ, in making a determination as to the severity of a mental impairment and whether it meets or equals a listed impairment, rate the degree of functional limitation resulting from the impairment in four categories: 1) activities of daily living; 2) social functioning; 3) concentration, persistence and pace; and 4) episodes of decompensation. On remand, the ALJ is to apply the analysis outlined in the Regulations with respect to the plaintiff's impairment of depression.

The plaintiff's motion for remand should be **GRANTED**. [Dkt. # 7]. The parties' competing motions for judgment should be **DENIED**. [Dkt. ## 7, 9]. Either party may timely seek review of this recommended ruling in accordance with Rule 72 (b) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 72 (b). Failure to do so may bar further review. 28 U.S.C. § 636 (b) (1) (B); Small v. Sec'y of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

**IT IS SO ORDERED.**

**Dated at Hartford, Connecticut, this 28th day of October, 2008.**

                                          /s/ Thomas P. Smith
                                          **Thomas P. Smith**
                                          **UNITED STATES MAGISTRATE JUDGE**